UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY D.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. C22-5588-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION**

Plaintiff appeals the ALJ's denial of her application for Supplemental Security Income. She contends the ALJ misevaluated the medical opinion evidence, her testimony, and lay witness testimony, and the ALJ's resulting residual functional capacity ("RFC") determination and step five findings are therefore erroneous. Dkt. 13 at 2. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff was born in 1969, has a high school education, and has previously worked at a cannery and as a retail clerk. Tr. 234, 638. On January 6, 2015, Plaintiff applied for benefits,

ORDER REVERSING THE COMMISSIONER'S DECISION - 1

alleging disability as of January 1, 2015.[1]  Tr. 17.  Her application was denied initially and on reconsideration.  Tr. 96-110.  On May 30, 2018, ALJ Grace conducted a hearing. ALJ Grace subsequently found Plaintiff not disabled in a July 5, 2018, decision.  Tr. 34-67 (May 2018 hearing); Tr. 17-29 (July 2018 decision).  The Appeals Council denied Plaintiff's request for review, and, in June 2019, Plaintiff appealed ALJ Grace's decision to this Court, and the case, 19-5492 MLP, was assigned to Judge Peterson.  Tr. 696-99.  Around the same time, on May 28, 2019, Plaintiff filed another new application for SSI benefits, which the Appeals Council held was duplicative of the 2015 application at issue here.  Tr. 743.  The Appeals Council thus ordered Plaintiff's 2019 SSI application be consolidated with Plaintiff's January 2015 application, which, at the time, was on appeal before Judge Peterson.  Tr. 743.

In February 2020, Judge Peterson affirmed ALJ Grace's decision on the merits, and Plaintiff subsequently appealed Judge Peterson's decision to the United States Court of Appeals for the Ninth Circuit.  Tr. 698-99, 714-27.  While Plaintiff's appeal was pending before the Ninth Circuit, on February 8, 2021, Plaintiff filed yet another new application for SSI benefits with the SSA.  Tr. 729-39, 625.  Unlike Plaintiff's 2019 SSI application, in July 2021, the SSA ruled on Plaintiff's 2021 application on the merits and determined, based on new evidence regarding Plaintiff's knee impairments, Plaintiff was disabled as of February 8, 2021.[2]  Tr. 729-39, 625.

---

[1] Plaintiff filed a prior application for SSI benefits in 2013, which was denied by an ALJ following a hearing in 2014, and which Plaintiff did not appeal.  *See* Tr. 71-91, 624.  In April 2022, ALJ Johnson found that given the change in Plaintiff's age and the law, the presumption of continuing disability associated with the 2014 decision was overcome.  Tr. 624.

[2] In April 2022, ALJ Johnson noted the SSA's award of benefits on Plaintiff's 2021 SSI application applied only to the period from February 8, 2021, onward.  Tr. 625.  Accordingly, ALJ Johnson clarified the relevant period for the instant case concerns the period beginning January 6, 2015, Plaintiff's alleged onset date, through February 7, 2021, "the day before [Plaintiff's] condition was found [sic] to have worsened to the point of disability."  Tr. 625.

ORDER REVERSING THE COMMISSIONER'S DECISION - 2

      Additionally, while Plaintiff's appeal was pending before the Ninth Circuit, in April 2021, the United States Supreme Court decided *Carr v. Saul*, holding social security claimants could raise Appointments Clause challenges for the first time in district court and there was no requirement a claimant exhaust the issue in the administrative proceedings below. 141 S.Ct. 1352, 1356-61 (2021). Following the *Carr* decision, Plaintiff filed a brief with the Ninth Circuit invoking *Carr* as applicable to the case. The Ninth Circuit subsequently vacated Judge Peterson's 2020 decision and judgment and remanded the matter to Judge Peterson with instructions the district court remand the case to the SSA so that Plaintiff could obtain a new hearing before a different, properly appointed ALJ. On June 24, 2021, Judge Peterson vacated her judgment and prior February 2020 order and remanded the case to the SSA for a rehearing before a new ALJ.

      On March 2, 2022, a new ALJ, ALJ Johnson, conducted a hearing, Tr. 648-69, and subsequently found Plaintiff not disabled on April 15, 2022. Tr. 624-40. The issues on remand before ALJ Johnson were identical to those raised by Plaintiff before Judge Peterson. *See* Tr. 742-45 (Appeals Council's September 2021 order vacating ALJ Grace's July 5, 2018 decision); *see also* 19-5492 MPL, Dkt. 10 (Plaintiff's opening brief in prior appeal). ALJ Johnson's decision is now before the Court.

**DISCUSSION**

**A.    ALJ Johnson's 2022 Hearing and Decision**

      Plaintiff argues throughout her briefs that ALJ Johnson violated the requirement she be provided with a de novo hearing following the remand on Appointments Clause grounds. Dkt. 13 at 4, 5, 7, 12; Dkt. 20 at 2, 4-7. In support, Plaintiff cites *Cody v. Kijakazi*, and contends that portions of ALJ Johnson's 2022 decision were "copied almost verbatim from ALJ Grace's

[2018] decision," which Plaintiff argues violates the requirement she be provided with a "true de novo hearing." Dkt. 13 at 7 (citing 48 F.4th 956 (9th Cir. 2022)). Specifically, Plaintiff argues ALJ Johnson "copied" ALJ Grace's reasoning regarding the evaluation of medical opinions from Drs. Wheeler, Alvord, and Sylwester, and also "copied" ALJ Grace's assessment of Plaintiff's testimony. Dkt. 13 at 4, 5, 7, 12; Dkt. 20 at 2, 4-7.

*Cody* is distinguishable from this case. In *Cody,* the Ninth Circuit held an ALJ appointed in violation of the Appointments Clause may not personally rehear the case on remand once properly appointed, and then, on remand, subsequently rely upon their earlier unconstitutional decision in denying benefits. 48 F.4th at 958. The ALJ denied the *Cody* claimant's benefits application in a 2017 decision, at which time (2017) the ALJ had not been properly appointed by the SSA Commissioner. *Id.* at 959; *see also Lucia v. SEC,* 138 S.Ct. 2044, 2049-51 (2018) (holding that SSA ALJs' appointments must comply with the requirements of the Appointments Clause). The *Cody* claimant subsequently appealed the ALJ's 2017 decision on the merits but did not raise an Appointments Clause challenge during their first appeal before the district court. 48 F.4th at 958. The district court subsequently reversed on the merits and remanded the case to the ALJ a rehearing. *Id.* The case was reassigned back to the same ALJ, whose appointment had since been properly ratified by the Commissioner. *Id.*

In a subsequent 2019 decision on remand, the same ALJ denied benefits and "copied verbatim" portions of her analysis from her prior 2017 decision. *Id.* at 962. The claimant again appealed the 2019 decision to the district court, this time raising the Appointments Clause violation in addition to challenges on the merits. *Id.* at 958. The district court nevertheless affirmed, denying the *Cody* claimant's Appointments Clause claim "because the 2017 decision had been vacated and [the ALJ] was properly appointed when she issued the 2019 decision." *Id.*

ORDER REVERSING THE COMMISSIONER'S DECISION - 4

at 960.  The Ninth Circuit, however, disagreed, holding, in spite of the ALJ's corrected appointment, "the [ALJ's] second [2019] decision [nevertheless remained] tainted by the first [2017] decision," and the claimant had the right to a new and different, constitutionally appointed ALJ during the post-2017 remand proceedings to remove the "taint" of the earlier, "pre-ratification ALJ decision." *Id.* at 958.  The *Cody* Court thus reversed and remanded to the district court with instructions to return the case to the Commissioner to "assign a *different*, validly appointed ALJ to rehear and adjudicate [the claimant's] case de novo." *Id.* at 962.

Here, unlike *Cody*, there is no dispute Plaintiff received a different ALJ following her Appointments Clause challenge.  Instead, Plaintiff relies on the similarities between ALJ Grace's and ALJ Johnson's decisions to suggest ALJ Johnson's decision remains "tainted."  Ignoring the issue of the "taint," the Commissioner argues ALJ Johnson was entitled to "incorporate by reference" ALJ Grace's decision.[3]  However, the Court need not decide in this instance whether, pursuant to the Commissioner's suggestion, ALJ Johnson was permitted to

---

[3] The Commissioner cites to *Jones v. Berryhill*, in which this Court rejected a claimant's argument that the ALJ was not permitted to incorporate by reference portions of an ALJ's previously vacated decision in his decision on remand. Dkt. 19 at 14 (citing No. C17-965-BAT, 2018 WL 1726405, at *4 (W.D. Wash. Apr. 10, 2018), *aff'd sub nom. Jones v. Saul*, 812 F. App'x 542 (9th Cir. 2020)).  In *Jones*, this Court specifically noted that an ALJ is entitled to incorporate by reference portions of a prior decision "not found to be erroneous." 2018 WL 1726405, at *4.  *Jones*, however, did not involve an Appointments Clause issue and is distinguishable from this case given the alleged constitutional "taint" here involving ALJ Grace's appointment.

Additionally, the Court notes that, in his opposition brief, the Commissioner construes the Appeals Council's mandate too narrowly in suggesting that the Appeals Council found only ALJ Grace's evaluation of Drs. Bruce Eather's and Gary Nelson's inadequate. Dkt. 19 at 14. While the Appeals Council explicitly referenced Drs. Eather and Nelson, it did not limit the new proceedings before ALJ Johnson to consideration of those opinions only, but instead very clearly required ALJ Johnson to further consider all of the medical opinions – including treating, nontreating, and nonexamining sources. Tr. 742.

ORDER REVERSING THE COMMISSIONER'S DECISION - 5

1  simply "incorporate by reference" ALJ Grace's reasoning.  *See* Dkt. 19 at 14.  That is because in
2  spite of the similarities and, in places, identical language and analyses employed by ALJ
3  Johnson, the record clearly shows that Plaintiff was afforded the requisite new hearing and
4  decision by a new and different ALJ.

5        In addition to a new ALJ, a new vocational expert ("VE") also testified at Plaintiff's new
6  2022 hearing.  *See* Tr. 662 (March 2022 testimony from VE Daniel McKinney); *cf.* Tr. 52 (May
7  2018 testimony from VE Lloyd Tomille).  ALJ Johnson also considered additional medical
8  evidence and opinions in conjunction with the 2022 hearing, including the 2019 opinion of
9  examining psychologist, Dr. Mayers, who ALJ Johnson found was entitled to "significant
10 weight," the 2021 opinion from DDS reviewing psychologist, Dr. Jon Anderson, and additional
11 2021 opinions from "DDS reviewing physicians" regarding Plaintiff's physical impairments.
12 *See* Tr. 636 (discussing Tr. 733, Dr. Anderson's July 23, 2021 opinion); Tr. 637 (discussing Tr.
13 964-69, Dr. Mayers' August 2019 opinion); Tr. 638 (discussing additional 2021 x-ray and
14 medical evidence along with Tr. 731-32, DDS reviewing physicians' July 2021 opinions
15 regarding Plaintiff's physical impairments); Tr. 624 (noting additional new evidence).  Plaintiff
16 and her husband both submitted additional function reports, and Plaintiff offered additional
17 testimony at the March 2, 2022 hearing, all of which ALJ Johnson considered.  *See* Tr. 857-68,
18 880-87, 653-62 (Plaintiff's March 2022 testimony).

19       Moreover, ALJ Johnson assessed several new impairments, distinct from those
20 previously assessed by ALJ Grace.  *See* Tr. 627 (ALJ Johnson concludes that Plaintiff's obesity,
21 radiculopathy, facet osteoarthritis, and headaches constitute severe impairments); *cf.* Tr. 19 (ALJ
22 Grace's step two conclusions).  ALJ Johnson also conducted new step three listings analysis and
23 offered additional record citations and support for his conclusions – even those conclusions that

were the same as ALJ Grace's conclusions. *See* Tr. 629 (step three analysis); Tr. 636 (evaluation of Dr. Platter's opinion).

Finally, a significant amount of the evidence and opinions overlapped in the 2018 and 2022 proceedings. Given this overlap, the fact that ALJ Johnson evaluated similarly – and at times identically – the existing medical opinions and evidence, thus assessing Plaintiff with an RFC nearly identical to that assessed by ALJ Grace, does not undermine the de novo nature of the 2022 proceedings.[4] For all of the above reasons, the Court concludes that ALJ Johnson provided Plaintiff with the new hearing and new decision required by the prior Appointments Clause violation and in accordance and *Lucia* and *Cody*. *See* 138 S.Ct. at 2049-51; 48 F.4th at 958-59. Accordingly, the Court rejects Plaintiff's challenge to ALJ Johnson's evaluation of the medical evidence, opinions, and testimony on this ground.

**B.      Medical Opinion Evidence[5]**

---

[4] The overlapping evidence and similarities inherent in the 2018 and 2022 proceedings are readily apparent in Plaintiff's counsel's nearly identical opening briefs as well in conjunction with the instant appeal and with her prior appeal of ALJ Grace's 2018 decision before Judge Peterson. *See* Dkt. No. 13; *cf.* 19-cv-05492 MLP, Dkt. No. 10.

[5] The Court notes Plaintiff also argues generally – over four pages – that the ALJ failed to properly evaluate "other medical evidence," and this failure constituted error because the medical evidence supported the challenged medical opinions. Dkt. 13 at 8-11. Plaintiff, however, fails to develop a coherent argument or specify which medical evidence she contends supports a particular challenged medical opinion. Given that Plaintiff has challenged *five* medical opinions, this lack of clarity and delineation very clearly falls short of appellate review requirements. *See Putz v. Kijakazi*, 2022 WL 6943095 (9th Cir. Oct. 12, 2022). While the Court has reviewed the administrative record in conjunction with its analysis of ALJ Johnson's treatment of the medical opinions, including the evidence cited by Plaintiff, the Court will not "manufacture arguments where none is presented." *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003). Counsel is further admonished that in future cases filed before this Court, he is required to delineate and explain which challenged medical evidence supports a particular challenged medical opinion – and why. *See Putz*, 2022 WL 6943095, at *2 (noting that claimant waived "any argument based on [clinical] findings" where claimant, who was represented by the same counsel as the instant case, "simply list[ed] numerous clinical findings, unaccompanied by argument").

ORDER REVERSING THE COMMISSIONER'S DECISION - 7

Plaintiff also challenges the ALJ's evaluation of five medical opinions, including one opinion regarding her physical impairments and four opinions regarding her mental impairments, as addressed below.

For claims filed before March 27, 2017, like this case, each of the three types of medical opinions—treating, examining, and non-examining—is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927. Generally, more weight is given to the opinion of a treating physician than to the opinion of a physician who did not treat the claimant. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When an ALJ gives a treating physician's opinion less than controlling weight, and the opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). When a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* Additionally, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and if the opinion is contradicted, the ALJ can reject the opinion only for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

### 1. Medical Opinions Regarding Physical Impairments

In August 2016, Dr. Sylwester examined Plaintiff, whose chief complaints at the time concerned her diabetes and leg pain. Tr. 430. Dr. Sylwester opined Plaintiff could sit for an

unlimited period of time, but she could stand or walk less than four hours and could never climb, balance, stoop, kneel, crouch or crawl due to radicular pain. Tr. 433. ALJ Johnson gave Dr. Sylwester's opinion "partial weight" given its consistency with imaging on Plaintiff's ankle and her BMI. Tr. 636. However, ALJ Johnson concluded Dr. Sylwester's standing and walking limitation was too restrictive, and was not supported by the medical evidence, including physical examinations, or with Plaintiff's activities of daily living. Tr. 637. Instead, in concluding that Plaintiff was capable of light work, ALJ Johnson agreed with the December 2016 opinion from state agency consulting physician, Dr. Platter, in which Dr. Platter opined Plaintiff was able to sit and to stand and/or walk for six hours in an eight hour day. Tr. 118. ALJ Johnson also assessed postural limitations that were less stringent than those assessed by Dr. Sylwester but more restrictive than those opined to by Dr. Platter.[6] *See* Tr. 631 (ALJ's finding Plaintiff cannot crawl and may only occasionally balance, stoop, kneel, or crouch); *cf.* Tr. 119 (Dr. Platter opined Plaintiff's only postural limitations were she could only occasionally climb ramps or stairs and could never climb ladders, ropes, or scaffolds).

      In arguing the ALJ misevaluated Dr. Sylwester's opinion, Plaintiff's primary argument concerns the issue already addressed above: that ALJ Johnson's analysis of Dr. Sylwester's opinion was "copied almost verbatim from ALJ Grace's decision." Dkt. 13 at 7. However, this argument is rejected for the reasons set forth above. Plaintiff fails to adequately develop her remaining conclusory argument that none of ALJ Johnson's reasons were legitimate, and the Court declines to manufacture her argument for her. Dkt. 13 at 7; Dkt. 20 at 3.

      For these reasons, the Court declines to disturb ALJ Johnson's evaluation of the medical

---

[6] ALJ Johnson ultimately accorded "partial weight" to Dr. Platter's opinion, concluding that it was "generally consistent" with the record, but that Plaintiff's pain and uncontrolled diabetes mellitus rendered her "slightly more limited than opined by Dr. [Platter]." Tr. 636.

opinions regarding Plaintiff's physical impairments.

### 2. Medical Opinions Regarding Mental Impairments

At step two, ALJ Johnson found Plaintiff's anxiety, depression, and PTSD constituted severe impairments. Tr. 627. Subsequently, in evaluating Plaintiff's Paragraph B limitations, ALJ Johnson concluded Plaintiff possessed mild limitations in understanding, remembering information, and adapting herself, and moderate limitations in social interaction and concentration. Tr. 630. As for Plaintiff's RFC, ALJ Johnson limited Plaintiff to simple tasks "that follow a routine; that is[,] the same tasks over and over," and to jobs without any interaction with the public and with only occasional, superficial interaction with co-workers and supervisors. Tr. 631. In assessing Plaintiff's RFC, ALJ Johnson afforded "significant weight" to the September 2016 and August 2019 opinions from examining psychologists, Drs. Alvord and Mayers, respectively, and "little weight" to the 2014 opinion from examining psychologist, Dr. Wheeler. Tr. 637; *see also* Tr. 964-69 (Dr. Mayers' opinion); Tr. 434-39 (Dr. Alvord's opinion); Tr. 326-27 (Dr. Wheeler's opinion). ALJ Johnson failed to consider the 2021 opinion from examining psychologist, Dr. Peter Weiss. Tr. 637; *see* Tr. 1019-23 (Dr. Weiss' opinion).

In the most recent medical opinion regarding Plaintiff's mental impairments, Dr. Weiss examined Plaintiff and diagnosed her with PTSD. Tr. 1022. Dr. Weiss opined Plaintiff's memory was "at least adequate," and her concentration and persistence were "moderately impaired" by her PTSD. Tr. 1022. Dr. Weiss, however, opined Plaintiff's "socialization" was markedly impaired by her PTSD, and her adaptive skills were moderately to markedly impaired. Tr. 1022.

The Commissioner suggests it is "arguable" Dr. Weiss' opined limitations were already included in ALJ Johnson's RFC. Dkt. 19 at 16. Alternatively, the Commissioner contends the

ALJ's failure to consider the opinion was harmless because Dr. Weiss' opinion was issued in June 2021, four months after the end of the relevant period in this case, February 2021. Dkt. 19 at 16. Additionally, the Commissioner argues any error was harmless because the SSA found Plaintiff disabled in the 2021 SSI case. Dkt. 19 at 16.

Contrary to the Commissioner's suggestion, ALJ Johnson's RFC assessment did not account for the fact Dr. Weiss opined to one marked limitation and another potentially marked limitation. *See* Tr. 1022. Had ALJ Johnson accounted for an opinion that Plaintiff possessed two marked limitations, those limitations would have rendered her disabled. *See* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00(A)(2)(b) (a claimant's mental disorder renders her disabled if it "result[s] in an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning"); *see also Allison G. v. Comm'r of Soc. Sec.*, No. C20-5839-BAT, 2021 WL 3661449, at *2 (W.D. Wash. Aug. 18, 2021) (holding that ALJ's failure to consider a nurse practitioner's medical opinion raised "a substantial likelihood of prejudice" where ALJ would have arrived at a different RFC and different conclusion regarding disability if the ALJ decided to adopt the opinion).

Nor did the timing of Dr. Weiss' opinion render the error harmless. Here, Dr. Weiss' opinion was offered just several months after the end of the relevant period, February 2021, and pertained to Plaintiff's very mental impairments at issue during the relevant period. *See Nerurkar v. Astrue*, No. C09-1541-RAJ-BAT, 2010 WL 2569157, at *5 (W.D. Wash. May 10, 2010), report and recommendation adopted, No. C09-1541-RAJ, 2010 WL 2569063 (W.D. Wash. June 21, 2010) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)) (holding "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability"); *see also Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir.

2017) (holding that where medical opinions "refer back" to the same chronic condition and symptoms discussed in earlier medical records, the "fact that [the most recent] opinions were issued significantly after claimant's DLI does not undercut the weight those opinions are due").

Finally, the SSA's July 2021 award of benefits did not apply to the relevant period from January 2015-February 2021 at issue here, and, therefore, did not render the ALJ's failure to consider Dr. Weiss' opinion harmless.  *See* Tr. 729-39.

For these reasons, the Court remands to the ALJ to consider Dr. Weiss' 2021 medical opinion.  The Court notes Plaintiff challenges as well ALJ Johnson's evaluation of the medical opinions from Drs. Wheeler, Alvord, and Mayers.  Given ALJ Johnson's failure to consider Dr. Weiss' opinion, on remand, the ALJ should reevaluate all of the medical opinions regarding Plaintiff's mental impairments in light of considering Dr. Weiss' opinions.

**C.      Plaintiff's Testimony**

Plaintiff testified at the 2018 and 2022 hearings and submitted two function reports, one from July 2016 and a second from March 2020.  *See* Tr. 34-67, 648-69, 262-69, 857-68.  ALJ Johnson found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree," but stopped short of a finding that she was malingering, instead noting that "inconsistencies undermine the weight that can be given to [Plaintiff's] symptom reports." Tr. 632.  Accordingly, ALJ Johnson was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply).

### 1. Plaintiff's Testimony Regarding Her Physical Impairments

As to her physical impairments, Plaintiff explained her diabetes was not really "in control," and when her blood sugar is high, her vision is blurred.[7] Tr. 41, 49. Plaintiff noted she was once fired from a job as a consequence of needing a break when her blood sugars were "acting up." Tr. 49. The employer denied her a break, and Plaintiff "walked out." Tr. 49.

Plaintiff also testified her legs hurt if she walks or stands for long periods of time. Tr. 659. She stated she is only able to walk for approximately fifteen minutes before her legs start aching, and she was terminated from a job at a cannery because her employer said she could not "keep up." Tr. 659. Plaintiff also experiences difficulty sitting for long periods of time before she has to get up and move around. Tr. 262, 51.

ALJ Johnson provided three reasons to discount Plaintiff's testimony about her physical impairments, including: (1) inconsistencies with the medical record; (2) conservative treatment or a lack of treatment; and (3) improvement of certain conditions. Tr. 633-34. Specifically, regarding Plaintiff's diabetes, ALJ Johnson noted Plaintiff's examinations showed it was primarily in "good control" and during times when it was uncontrolled, Plaintiff did not report any complaints of serious distress. Tr. 633. Regarding Plaintiff's ankle pain and ples panus, ALJ Johnson suggested the medical examinations from 2017 through 2020 "showed [Plaintiff] to be in no distress and ambulating independently with a normal gait." Tr. 633.

As for Plaintiff's neck pain and facet osteoarthritis, ALJ Johnson noted Plaintiff received conservative treatment consisting of pain medication and physical therapy, and the treatment was

---

[7] ALJ Johnson found that Plaintiff's diabetes mellitus, ankle degenerative joint disease, ples planus, obesity, radiculopathy, facet osteoarthritis, and headaches constituted severe impairments. Tr. 627.

effective and resulted in improvement. Tr. 633. ALJ Johnson observed, generally, Plaintiff reported low levels of pain over the years at medical examinations, and her headaches resolved with her decrease in neck pain. Tr. 633-34. As for her leg pain, which was the source of the subsequent 2021 disability finding, ALJ Johnson described Plaintiff's 2016 examination with Dr. Sylwester during which Plaintiff "ambulated with a normal gait without an assistive device, . . . was able to bend, squat, and walk on her heels and toes without difficulty, . . . [and] was able to stand on each leg independent," although she was unable to hop on either foot. Tr. 634. ALJ Johnson further noted the 2016 examination "showed normal strength, range of motion, and sensation throughout [Plaintiff's' joints and muscle groups with no pain or abnormalities." Tr. 634.

Plaintiff makes only one argument regarding the ALJ's evaluation of her testimony concerning her physical impairments – an argument that applies to both her mental and physical impairment testimony.[8] She argues ALJ Johnson was not permitted to reject her testimony simply because it was inconsistent with the medical evidence. Dkt. 13 at 12. However, the Ninth Circuit recently clarified otherwise, rejecting the very argument posed by Plaintiff as a "misreading" of its precedent. *Smartt*, 53 F.4th at 498. The *Smartt* court agreed "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of the pain.'" *Id.* (discussing and quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)) ("an ALJ cannot effectively render a claimant's subjective

---

[8] Again, in her opening brief, Plaintiff includes a three page list or summary of her testimony, after which she, absent any elaboration, simply states that the ALJ improperly rejected the listed testimony. Dkt. 13 at 13-15. As recognized by the Ninth Circuit, simple summaries of evidence lack the clarity and delineation required for appellate review. *See Putz*, 2022 WL 6943095, at *2; *see also Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present appellant's contentions and the reasons for them.").

ORDER REVERSING THE COMMISSIONER'S DECISION - 14

symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborating' every allegation within the subjective testimony"). However, it clarified that "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id*. The *Smartt* court further reasoned that an ALJ is not required "to simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case." *Id.* at 499 (noting that "the standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince"). Here, under *Smartt*, the ALJ was permitted to discount Plaintiff's testimony to the extent that inconsistent medical evidence undercut it. *Id.* at 498.

Other than the above argument, Plaintiff does not explicitly challenge any of ALJ Johnson's remaining reasons for discounting her testimony as it relates to her physical limitations. Because that unchallenged reasoning supports ALJ Johnson's assessment of Plaintiff's testimony related to her physical impairments, the Court will not disturb the ALJ's evaluation of Plaintiff's testimony regarding her physical limitations.

### 2. Plaintiff's Testimony Regarding Her Mental Impairments

Plaintiff testified she cannot work because she experiences anxiety and gets "nervous" around other people, especially her family and authority figures. Tr. 658, 43-44. She stated she "cannot be left alone with [her] family because they really stress [her] out," and noted that calls from her father "freak her out." Tr. 267-68.

Plaintiff testified she experiences panic attacks up to three times per week. Tr. 50, 661. Plaintiff was once on anti-anxiety medications but did not like how they made her feel. Tr. 44.

She stated at both the 2018 and 2022 hearings that she quit counseling because she didn't believe her counselor was listening to her, and she had not found another counselor she liked. Tr. 656-57, 44-45. Plaintiff acknowledged that she considered returning to counseling but she did not want to experience the distress associated with it. Tr. 46.

According to Plaintiff, she reads, paints, and takes care of her dog most days. Tr. 651. In 2016, Plaintiff stated she tended to her own personal care and bathed, fed, brushed, and walked her dog three times per day. Tr. 263, 265. Also in 2016, Plaintiff cleaned her house approximately four times per week for a total of two and one-half hours and spent two hours per week doing the laundry. Tr. 264. Plaintiff does not drive, and her husband has to take her to appointments. Tr. 47, 265. Although Plaintiff went grocery shopping in 2016, she testified in 2022, that she no longer goes to stores or does the shopping. Tr. 662.

ALJ Johnson discounted Plaintiff's testimony regarding her mental impairments, for the following reasons: (1) inconsistent mental status examinations and observations; (2) Plaintiff's lack of consistent treatment and failure to comply with treatment; (3) Plaintiff's mental symptoms improved with medications and therapy; and (4) Plaintiff's role as an unreliable historian. Tr. 627, 636.

Plaintiff argues the ALJ erred in evaluating her testimony regarding her mental impairments because the ALJ mischaracterized her mental status findings as "mild" in concluding that her testimony was inconsistent with the results of her mental status examinations. Dkt. 13 at 12 (citing Tr. 636). Plaintiff also challenges the ALJ's findings her mental health condition did not interfere in her ability obtain treatment or in her failure to comply with treatment. Dkt. 13 at 13; Tr. 635. Third, Plaintiff argues the ALJ erred in discounting her testimony because she was a "poor historian," acknowledging some inaccuracy,

ORDER REVERSING THE COMMISSIONER'S DECISION - 16

but contending that any misleading testimony was not intentional. Dkt. 13 at 13.

As noted above the Court finds the medical opinions regarding Plaintiff's mental limitations must be reassessed. This reassessment necessarily affects the ALJ's determination that Plaintiff's testimony is inconsistent with the medical evidence, is less severe than the medical evidence shows or that her symptoms would be mild if she engaged in treatment. The Court also finds the ALJ's determination to discount Plaintiff's testimony because she is a poor historian not supported by substantial evidence. The ALJ made that finding in reliance on one appointment. The finding does not establish Plaintiff regularly makes statements that are incorrect or inaccurate and that her statements are therefore unreliable.

The Court accordingly directs that upon remand the ALJ shall also reconsider Plaintiff's testimony as to the limitations caused by her mental impairments.

**D.      Lay Witness Testimony**

The record also contains a 2018 lay witness statement and two 2016 and 2021 function reports from Plaintiff's husband of twenty-seven years, W.D., along with a 2018 statement from Plaintiff's sister-in-law, J.D., who has known Plaintiff for approximately twenty-six or twenty-seven years.[9] Tr. 274-81 (W.D.'s 2016 function report); Tr. 880-87 (W.D.'s 2021 function report); Tr. 312-16 (W.D.'s 2018 lay witness statement); 317-21 (J.D.'s 2018 lay witness statement). The lay witness testimony includes statements regarding both Plaintiff's mental and physical impairments. ALJ Johnson gave W.D.'s and J.D.'s testimony only "partial weight," concluding the testimony was inconsistent with the medical evidence and Plaintiff's daily functioning. Tr. 632.

---

[9] Because this Order contains potentially sensitive medical information, the Court refers to Plaintiff's family members by their initials.

ORDER REVERSING THE COMMISSIONER'S DECISION - 17

Plaintiff argues simply the ALJ's findings were not supported by substantial evidence and did not constitute germane reasons to reject the lay witness testimony. Dkt. 13 at 17. Plaintiff fails to demonstrate or explain why the ALJ's reasons for rejecting the lay witness testimony as it concerned her physical impairments were not germane, and the Court will not make Plaintiff's arguments for her.[10] However, because the case must be remanded to reassess the medical opinions regarding Plaintiff's mental impairments, the ALJ shall also reassess the lay witness testimony as to the limitations caused by Plaintiff's mental impairments on remand.

**E.     Additional Issues**

Plaintiff also argues ALJ Johnson erred in his RFC assessment, and ALJ Johnson's VE hypotheticals failed to include all of Plaintiff's limitations. The scope of remand regarding the ALJ's RFC determination and hypothetical questions is delineated by the errors the Court has found. As noted above, on remand, the ALJ must reassess the opinion evidence and testimony as to Plaintiff's mental impairments.

**F.     Remedy**

Plaintiff asks the Court to remand this case with instructions for an immediate award of benefits. Dkt. 13 at 18-19. The Court may remand for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. Courts have flexibility in applying this rule and may instead remand for

---

[10] The Court notes that Plaintiff also argues that the ALJ erred in failing to consider an SSA interviewer's July 2016 and February 2021 interview notes. Tr. 247-48, 877. Again, Plaintiff has not explained how those notes are relevant or why the ALJ was required to consider them.

further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The Court finds the conditions for an award of benefits are not met. Although the record appears to have been fully developed and ALJ Johnson failed to consider all of the medical opinions regarding Plaintiff's mental impairments, it is not clear that even if the improperly rejected evidence were credited as true, an ALJ would be required to find Plaintiff disabled. Rather, the Court finds further administrative proceedings would be useful in order to allow the ALJ to reevaluate the improperly rejected evidence along with the rest of the evidence. Accordingly, the Court finds that remand for further administrative proceedings is the proper remedy.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the medical opinions including Dr. Weiss' 2021 opinion; reassess the testimony of Plaintiff and lay witnesses limited to mental impairments; develop the record and redetermine RFC as necessary and proceed to the remaining steps of the disability determination process as appropriate.

The Court **DENIES** Plaintiff's related request for a new ALJ on remand. Plaintiff was afforded the new hearing and new ALJ (ALJ Johnson), as required by the Appointments Clause violation. Further, the Court finds the record does not indicate that ALJ Johnson is biased or suffers from some other legal basis and must be replaced.

Thus, the Court declines to direct the Commissioner to select a new ALJ to hear this matter on remand.

DATED this 14th day of April, 2023.

                                               _____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S DECISION - 20